UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NOLA HEALTH SOLUTIONS, LLC,                          CIVIL ACTION
ET AL.

VERSUS                                              NO. 18-7007

NEW ORLEANS REGIONAL                                SECTION "R" (2)
PHYSICIAN HOSPITAL
ORGANIZATION, INC., ET AL.

## ORDER AND REASONS

Before the Court is defendants' motion to dismiss the case under

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court finds that

(1) there is not complete diversity between the parties, and (2) the Court

cannot sever the nondiverse defendants, because they are indispensable to

plaintiffs' action. The Court therefore dismisses plaintiffs' complaint for lack

of subject matter jurisdiction.


## I.   BACKGROUND

This case arises from an alleged joint business venture to build and

operate medical centers in the greater New Orleans area.[1] Plaintiffs are (1)

---

[1]     R. Doc. 71. For a more complete description of the facts plaintiffs allege
in their complaint, *see* R. Doc. 54.

NOLA Health Solutions, LLC, a Delaware limited liability company that was formed in July 2016 for the purposes of this business venture; (2) Royd Lemus; and (3) Enrique Sanchez.[2]  Defendants are (1) PH Holdings, LLC (PHH), (2) New Orleans Regional Physician Hospital Organization, d/b/a People's Health, and (3) Capital City Medical Group, LLC (CCMG).  CCMG and People's Health are both wholly-owned subsidiaries of PHH.[3]  People's Health is a healthcare provider that offers its members various prepaid health plans.[4]  Plaintiffs allege that at all relevant times for the purposes of their complaint, PHH "controlled the actions/decisions" of both People's Health and CCMG.[5]

Plaintiffs allege that up until around 2010, PHH did not directly or indirectly provide healthcare services to its members.[6]  Around that time, PHH, through People's Health, allegedly began to explore the prospect of constructing and operating medical clinics in Louisiana.[7]  By the middle of 2013, PHH had constructed one medical center in the Parish of East Baton Rouge.[8]  It was also allegedly close to completing and opening a medical

---

[2]    R. Doc. 71 at 2 ¶¶ 1-3.
[3]    *Id.* ¶¶ 4-6.
[4]    *Id.* ¶ 8.
[5]    *Id.* at 10 ¶ 19.
[6]    *Id.* at 11 ¶ 25.
[7]    *Id.* ¶ 26.
[8]    *Id.* ¶ 30.

center in Gretna, Louisiana, and had plans to construct another in Westwego, Louisiana.[9] Plaintiffs allege that PHH was "way over budget" on the Gretna and Westwego projects and did not have sufficient funds to complete the planned construction.[10]

During the summer of 2013, nonparty Carol Solomon—the Chief Executive Officer (CEO) of People's Health, the Manager of CCMG, and a member of the Board of Managers of PHH[11]—was allegedly introduced to Lemus while Solomon was visiting her niece in Miami, Florida.[12] Solomon's niece is the wife of Sanchez.[13] Lemus and Sanchez are both in the construction business.[14] In 2013, Lemus also allegedly owned and operated a P.E.T.-C.T. and M.R.I. scanning and diagnostic center.[15] Solomon explained to Lemus and Sanchez defendants' efforts to build new medical centers in Louisiana and allegedly stated that defendants were in the process of partnering with parties who could operate the newly constructed clinics.[16]

---

[9]     *Id.* at 11-12 ¶ 31.
[10]    *Id.* at 12 ¶ 33.
[11]    *Id.* at 10 ¶ 20.
[12]    *Id.* at 12 ¶ 36.
[13]    *Id.*
[14]    *Id.* at 13 ¶ 38.
[15]    *Id.*
[16]    *Id.* at 12-13 ¶ 37.

Plaintiffs contend that after this initial meeting, Lemus, Sanchez, and Solomon began to discuss potential business opportunities.[17]

Plaintiffs assert that they eventually reached an agreement with defendants whereby Lemus and Sanchez would "manage and supervise" the construction of the Westwego medical center for free and for reimbursement of their out-of-pocket costs only.[18]  In exchange, plaintiffs would be granted the right to manage and operate the Westwego and Gretna centers under a "PHH/People's Health" provider agreement.[19]   Plaintiffs allege that defendants ultimately reneged on this agreement, causing plaintiffs substantial damages.[20]

NOLA Health initially filed a complaint against defendants on July 26, 2018.[21]  The Court dismissed this complaint without prejudice for lack of subject matter jurisdiction, because NOLA Health failed to allege that there was diversity of citizenship between the parties.[22]  The Court noted that NOLA Health, as well as defendants PHH and CCMG, were all limited liability companies whose citizenship is determined by the citizenship of all

---

[17]     *Id.* at 13 ¶ 41.
[18]     *Id.* at 34 ¶ 162, 35-36 ¶ 172.
[19]     *Id.*
[20]     *Id.* at 37 ¶ 180.
[21]     R. Doc. 1.
[22]     R. Doc. 54 at 11-13.

their members.[23]  But in its complaint, NOLA Health did not affirmatively allege the citizenship of its members or PHH's and CCMG's members.[24]  The Court also found that NOLA Health did not have Article III standing to recover for all of the claims it asserted in its initial complaint.[25]

NOLA Health then timely filed an amended complaint, adding Lemus and Sanchez as plaintiffs.[26]  In the amended complaint, plaintiffs allege causes of action of breach of contract, contractual fraud, bad faith breach of an oral contract, detrimental reliance, and unjust enrichment.[27]  Plaintiffs explain that NOLA Health has three members—Lemus, Sanchez, and nonparty Dr. Sonia Michael—all of whom are citizens of Florida.[28]  Plaintiffs further allege that CCMG's sole member is PHH, and that PHH has 72 members, none of whom is a citizen of Florida.[29]

Defendants now move to dismiss plaintiffs' amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[30]  They argue that the

---

[23]  *Id.*

[24]  *See* R. Doc. 1 at 1 ¶ 2, 2 ¶ 4 (NOLA Health stating only that it has a principal place of business in Miami-Dade County, Florida, and that PHH's and CCMG's principal places of business are located in Metarie, Louisiana).

[25]  R. Doc. 54 at 13-20.

[26]  R. Doc. 56; R. Doc. 71.

[27]  *Id.* at 33-57.

[28]  *Id.* at 3 ¶ 13.

[29]  *Id.* at 3-10.

[30]  R. Doc. 61.

parties are not completely diverse—and that the Court therefore lacks jurisdiction over the matter—because one of PHH's 72 members, Dr. Kevin Roache, is in fact a citizen of Florida.[31]  They further argue that even if the Court does not have jurisdiction over the action, plaintiffs fail to state a claim upon which relief can be granted.[32]  Plaintiffs oppose the motion.[33]

## II.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction and possess power over only those cases authorized by the United States Constitution and federal statutes.  *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).  Two possibilities for jurisdiction exist: federal question jurisdiction under 28 U.S.C. § 1331, and diversity jurisdiction under 28 U.S.C. § 1332.  Diversity jurisdiction exists only when there is complete diversity of citizenship, and the amount in controversy exceeds $75,000, exclusive of interests and costs.  28 U.S.C. § 1332(a).

If a district court lacks jurisdiction over the subject matter of a plaintiff's claims, it must dismiss the case.  *See* Fed. R. Civ. P. 12(b)(1).  The lack of subject matter jurisdiction may be raised at any time during the

---

[31]  R. Doc. 61-1.
[32]  *Id.*
[33]  R. Doc. 74.

pendency of the case by any party or by the court. *See Kontrick v. Ryan*, 540 U.S. 443, 456 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("[A]ny federal court may raise subject matter jurisdiction *sua sponte*."). "The citizenship of a party at the commencement of the action is controlling for purposes of determining diversity jurisdiction and subsequent actions do not affect the court's jurisdiction." *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 776 (5th Cir. 1986) (citing *Oliney v. Gardner*, 771 F.2d 856, 858 (5th Cir. 1985)) (emphasis in original). Finally, "[t]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury*, 85 F.3d at 248.

## III. DISCUSSION

### A. Citizenship of Dr. Kevin Roache

The parties dispute whether Dr. Roache was a citizen of Louisiana or Florida when this action began.[34] If Dr. Roache is found to be a citizen of

---

[34] R. Doc. 61-1 at 10-12; R. Doc. 74 at 9-12.

Florida, neither PHH or CCMG would be diverse from plaintiffs, who are all Florida citizens.[35]

A person's citizenship is determined by his domicile. *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974), *cert. denied*, 419 U.S. 842 (1974). A person's domicile is his "true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Id.* (citing *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954)). Mere residence in a state is not sufficient. *Id.* To determine a person's domicile, courts look to certain factors that shed light on the person's intention to establish residence, which "may include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Coury*, 85 F.3d at 251. No single factor is determinative. *Id.*

A person's domicile persists until a new one is acquired, or the person's domicile is otherwise clearly abandoned. *Id.* at 250. "There is a presumption in favor of [a person's] continuing domicile which requires the party seeking

---

[35] Plaintiffs allege that CCMG's sole member is PHH, so its citizenship is completely determined by PHH's citizenship.

to show a change in domicile to come forward with enough evidence to that effect. . . ." *Id.*  But despite this presumption, the "ultimate burden on the issue of jurisdiction" remains with the "party invoking federal jurisdiction." *Id.*

There is no dispute that Dr. Roache was once domiciled in Louisiana.[36] Defendants claim that Dr. Roache changed his domicile to Florida in June of 2018, shortly before this action commenced.[37]  Dr. Roache and his wife each filed a Declaration of Domicile with the Clerk of the Circuit Court in Okaloosa County, Florida, on June 19, 2018, declaring the state of Florida to be their place of domicile.[38]  In this declaration, Dr. Roache stated that he previously resided in Louisiana, but now "intend[ed] to maintain" his Florida abode has his "permanent home."[39]  Plaintiffs argue that Dr. Roache did not in fact change his domicile to Florida in June 2018, and that he remains a citizen of Louisiana for the purposes of diversity jurisdiction.[40]  The Court will address each of the factors explicitly named in *Coury* to determine Dr. Roache's place of domicile at the time this action began.

---

[36]  R. Doc. 61-3 at 3.
[37]  R. Doc. 61-1 at 10-12; R. Doc. 61-3.
[38]  R. Doc. 61-3 at 3-4.
[39]  *Id.* at 3.
[40]  R. Doc. 74 at 9-12.

### 1. Coury *Factors*

#### a) *Civil and political rights*

Dr. Roache states in an affidavit that he registered to vote in Florida on or about July 29, 2016, and that he is not registered to vote in any other state.[41]  This factor therefore weighs in favor of a finding that Dr. Roache is domiciled in Florida.

#### b) *Driver's license and other licenses*

Dr. Roache states that he obtained a Florida driver's license in June 2018, and that the license expires on August 13, 2026.[42]  Plaintiffs have presented evidence—obtained through a private investigator—that Dr. Roache was issued a Louisiana driver's license in September 2016.[43]  It expires on August 13, 2022.[44]  This evidence supports a finding that Dr. Roache changed his domicile to Florida in June of 2018, as defendants allege.

Dr. Roache was issued a physician's license from the Louisiana State Board of Medical Examiners on September 1, 2004.[45]  This license is active through August 31, 2019.[46]  Dr. Roache stated in his affidavit that he is

---

[41]  R.  Doc. 61-3 at 2.
[42]  *Id.*
[43]  R. Doc. 74-1 at 4, 40.
[44]  *Id.* at 40.
[45]  *Id.* at 2, 7.
[46]  *Id.*

currently employed as an independent medical consultant by Advanced Medical Pricing Solutions, which is located in the state of Georgia.[47] Defendants explain in their reply brief that Dr. Roache no longer actively practices as a physician.[48] This statement is consistent with a Dr. Roache's LinkedIn profile, a copy of which plaintiffs have attached to their opposition.[49] The Court finds that Dr. Roache's active physician's license does not support a finding that he continues to be domiciled in Louisiana. This license was issued in 2004, and is therefore consistent with defendants' contention that Dr. Roache was previously a practicing physician domiciled in Louisiana, but that he has since changed his domicile to Florida.

### c) Pays taxes

Dr. Roache states that his mailing address designated in his federal income tax returns is a Florida address.[50] Plaintiffs provide no information to rebut this contention. This factor therefore weighs in favor of a finding that Dr. Roache is domiciled in Florida.

---

[47] R. Doc. 61-3 at 1.
[48] R. Doc. 77 at 2.
[49] *See* R. Doc. 74-2.
[50] R. Doc. 61-3 at 2.

### d) *Owns real and personal property, and maintains a home*

Dr. Roache states that he resides at 8091 Sanctuary Drive, Unit 1, Naples, Florida, 34104 (Naples address).[51] He further states that his mailing address is 5753 Highway 85 North, Crestview, Florida, 32536 (Crestview address).[52] Plaintiffs' investigator confirms that Dr. Roache has owned the property at the Naples address since 2009.[53] Dr. Roache states in his affidavit that in addition to his Florida residence, he also owns property in Louisiana, Mexico, and Canada.[54]

Plaintiffs' investigator links Dr. Roache to three separate residential properties in Louisiana.[55] First, the investigator states that from November 2003 to December 2018, Dr. Roache owned a home at 107 Pineridge Street,

---

[51]    *Id.* at 1.

[52]    *Id.* Dr. Roache listed the Crestview address on his Declaration of Domicile. *Id.* at 3. Plaintiffs' investigator states that the Crestview address is a warehouse, rather than a residential location, and that it is home to a mail-forwarding business. R. Doc. 74-1 at 4. Plaintiffs argue that Dr. Roache's Declaration of Domicile and his affidavit are not credible pieces of evidence because of this discrepancy. R. Doc. 74 at 11. But defendants state in their reply brief that Dr. Roache's mail-forwarding service requires that he use his mailing address to establish his Florida residency. R. Doc. 77 at 2. Dr. Roache's and plaintiffs' investigator's statements are therefore entirely consistent. The Court accordingly finds that Dr. Roache's use of the Crestview address on his Declaration of Domicile is not reason to question the credibility of his statements or defendants' evidence.

[53]    R. Doc. 74-1 at 4.

[54]    R. Doc. 61-3 at 2.

[55]    R. Doc. 74-1 at 2-3.

in Mandeville, Louisiana.[56]   According to the investigator, Dr. Roache declared this property as his homestead from 2004 to 2008, and again in 2017 and 2018.[57]  This is the residence that Dr. Roache listed on his Florida Declaration of Domicile form as his previous place of residence.[58]  Second, the investigator states that from 2009 to 2012, Dr. Roache declared a property at 2071 Timbercreek Lane, in Mandeville, as his homestead.[59] Third, the investigator states that in May 2018—shortly before Dr. Roache declared Florida as his place of domicile—Dr. Roache purchased an undeveloped tract of land at 468 Tiger Avenue, in Covington, Louisiana.[60] The investigator further states that this property is zoned as residential, and as of January 24, 2018, "a home was being constructed at this residential lot."[61]  The Tiger Avenue property is the address reflected on Dr. Roache's Louisiana physician's license.[62]

With respect to personal property, Dr. Roache states that all but one of his vehicles are registered in Florida and have Florida license plates.[63]  He

---

[56]    *Id.* at 2.
[57]    *Id.* at 2, 11-24.
[58]    R. Doc. 61-3 at 3.
[59]    R. Doc. 74-1 at 2, 11-24.
[60]    *Id.* at 2-3.
[61]    *Id.* at 3.
[62]    *Id.* at 7.
[63]    R. Doc. 61-3 at 2.

further states that he does have one vehicle registered in South Dakota, which he keeps in Mexico.[64]

That Dr. Roache owns residential properties outside of Florida does not undermine defendants' claim that his Florida residence at the Naples address was his domicile at the time this action began. *See Greystar Dev. & Constr., LP v. Crescent Prop. Partners, LLC*, No. 11-2945, 2012 WL 13001049, at *3 (E.D. La. Sept. 25, 2012) (individual who owned property in Texas, Louisiana, Florida, and Colorado was found to be domiciled in Texas, because he stated that he intended to make his Texas ranch his permanent home). When viewing Dr. Roache's real and personal property in the context of his other ties to Florida beginning in June 2018, this factor weighs in favor of a finding that he is domiciled in Florida.

### e)    Bank accounts

Dr. Roache states that his mailing address for all of his bank and investment accounts is a Florida address.[65] Plaintiffs provide no information to rebut this contention. This factor therefore weighs in favor of a finding that Dr. Roache is domiciled in Florida.

---

[64]    *Id.*
[65]    R. Doc. 61-3 at 2.

### f) *Membership in clubs or religious centers*

Neither plaintiffs nor defendants mention any clubs or groups to which Dr. Roache is a member. This factor therefore does not weigh in either direction.

### g) *Place of business or employment*

As already addressed, Dr. Roache has an active Louisiana physician's license.[66] But again, Dr. Roache states that he is currently employed as an independent medical consultant by Advanced Medical Pricing Solutions, which is located in Georgia.[67] Dr. Roache avers that his work is "performed exclusively online and can be conducted from anywhere."[68] Dr. Roache's LinkedIn page, which plaintiffs attach to their motion, confirms that Dr. Roache is currently employed by Advanced Medical Pricing Solutions.[69] This factor therefore does not weigh in either direction.

### 2. *Conclusion*

The evidence before the Court establishes that Dr. Roache was domiciled in Florida when this action began in late July 2018. Dr. Roache declared Florida to be his place of domicile in June 2018,[70] and he states in

---

[66]   R. Doc. 74-1 at 7.
[67]   R. Doc. 61-3 at 1.
[68]   *Id.*
[69]   R. Doc. 74-2 at 1.
[70]   R. Doc. 61-3 at 3.

his affidavit that he intends to reside in Florida permanently.[71]  The other evidence before the Court corroborates this statement.  As of June 2018, Dr. Roache was registered to vote in Florida; his bank and investment accounts contained Florida mailing addresses; he designated a Florida address on his federal income tax returns; he had obtained a Florida driver's license; and nearly all of his personal vehicles were registered in Florida and had Florida license plates.[72]  Because Dr. Roache represents that he changed his domicile shortly before this action began, it is defendants' burden to present enough evidence to establish that Dr. Roache now actually resides in Florida and intends to permanently remain there.  *Coury*, 85 F.3d at 250.  Defendants have met this burden.  *See Greystar Dev. & Constr., LP*, 2012 WL 13001049, at *2-3, 5 (individual who voted in Texas, had a Texas driver's license, paid property taxes in Texas, owned property in several states, and intended to stay with his family on his ranch in Texas, was considered domiciled in Texas even though his principal work office was located in Louisiana); *cf. Hendry v. Masonite Corp.*, 455 F.2d 955, 955-56 (5th Cir. 1972) (finding that party did not show a change in domicile from Mississippi to Illinois, when at the time of service the only home he owned was in Mississippi, all of his

---

[71]     *Id.* at 2.
[72]     *Id.* at 1-2.

household furnishings were in Mississippi, his family still lived in Mississippi, and he still voted as a Mississippi resident).

Plaintiffs bear the ultimate burden of showing that the Court has diversity jurisdiction over this action, *see Coury*, 85 F.3d at 250, and they have failed to do so. Plaintiffs rely heavily on their investigator's statements that Dr. Roache continues to own residential property in Louisiana.[73] But as already addressed, that Dr. Roache owns real property outside of Florida does not counteract the overwhelming evidence showing that in June 2018 he changed his domicile to Florida and intended to remain there. The Court accordingly finds that Dr. Roache was domiciled in Florida starting in June 2018, and that he was therefore a Florida citizen when this action began. PHH and CCMG were thus both citizens of Florida, and this case lacked complete diversity of the parties when NOLA Health filed the initial complaint.[74]

---

[73]    *See* R. Doc. 74 at 9-12.

[74]    In their opposition, plaintiffs request an evidentiary hearing on the question of Dr. Roache's domicile. R. Doc. 74 at 13. Plaintiffs cite *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981), in support of their request. *Id.* In *Williamson*, the Fifth Circuit noted that when a defendant moves to dismiss an action for lack of jurisdiction, "the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss." *Williamson*, 645 F.2d at 414. This requirement has been satisfied here. Plaintiffs have had a significant amount of time to develop factual information regarding Dr. Roache's domicile, and they have presented that information to the Court in

## B.    Indispensability of Nondiverse Parties

Plaintiffs state in a footnote in their opposition brief that if the Court were to determine that the parties are not completely diverse, they would "request" that the Court "drop CCMG and PHH as defendants pursuant to [Federal Rule of Procedure 21] so that this action can proceed solely against [People's Health]."[75]  Defendants do not address this footnote in their reply brief.

Rule 21 states that "[m]isjoinder of parties is not a ground for dismissing an action," and that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  Although by its terms Rule 21 covers only instances of "misjoinder," "it is well settled that Rule 21 invests district courts with authority to allow a dispensable party to be dropped at any time."  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989); *see also Moss v. Princip*, 913 F.3d 508, 519 (5th Cir. 2019) (district court did not abuse its discretion in determining partnership was a dispensable party that could be dropped under Rule 21 to preserve the Court's diversity jurisdiction over an action); Wright & Miller, 7 *Federal*

---

opposition to defendants' motion.  Plaintiffs do not explain how an oral hearing would provide the Court with any other useful information that could plausibly impact its ruling.

[75]    R. Doc. 74 at 12 n.3.

*Practice and Procedure* § 1685 (3d ed. 2019) ("Courts frequently employ Rule 21 to preserve diversity jurisdiction over a case by dropping a nondiverse party if the party's presence in the action is not required under Rule 19.").

As these authorities indicate, a Court may exercise this discretion under Rule 21 only if the nondiverse party is dispensable to the plaintiff's action under Rule 19. Rule 19 directs federal courts to join "required" parties when feasible. *Moss*, 913 F.3d at 515. When joining a "required" party is not feasible—such as when its joinder would defeat diversity jurisdiction—"the court must determine whether the party is merely necessary to the litigation, or in fact indispensable." *Id.* (internal quotation marks omitted). If the parties are indispensable, the proper action is to dismiss the entire case for lack of subject matter jurisdiction. Rule 19(b) directs courts to consider four factors in assessing whether a party is indispensable:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;

> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* (citing Fed. R. Civ. P. 19(b)).

Courts do not always engage in a step-by-step analysis of the Rule 19(b) factors when determining whether a party is indispensable. Indeed, the Supreme Court has explained that "there is no prescribed formula for determining in every case whether a person is an indispensable party." *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 117 n.14 (1968). For instance, the Fifth Circuit and other circuits have found a party to be indispensable when it is the "primary participant" in the factual scenario underlying a plaintiff's claims. *See Freemen v. Nw. Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985) (collecting cases). In *Freeman*, the plaintiffs named as a defendant a parent corporation but did not sue the parent's subsidiary, whose presence could have destroyed diversity jurisdiction. *Id.* at 554-55. The Fifth Circuit noted that the plaintiffs sought "to impose liability on [the parent] not for its own acts, but for those of [the subsidiary]." *Id.* at 559. The court found that in such a situation—when the absent party was not just an "active participant" in the allegations, but the "primary participant"—the subsidiary was an indispensable party. *Id.*; *see also H.D. Corp. of P.R. v. Ford Motor Co.*, 791 F.2d 987, 992-93 (1st Cir.

1986) (parent company was an indispensable party when it was "clear from the face of the complaint that plaintiffs' . . . claims [were] largely directed against the parent company").

More recently, the First Circuit affirmed a district court's dismissal of an action for lack of diversity jurisdiction for similar reasons. *See B. Fernandez & HNOS, Inc. v. Kellogg USA, Inc.*, 516 F.3d 18 (1st Cir. 2008). In *Kellogg*, nonparty Kellogg Caribbean, which would have destroyed diversity jurisdiction if it were included in the matter, sought to intervene. *Id.* at 20. The plaintiffs had brought the action against only Kellogg USA, an affiliate of Kellogg Caribbean. *Id.* The First Circuit noted that "a close reading of the [complaint] reveals . . . Kellogg Caribbean as playing a significant role throughout the course of Kellogg USA's alleged legal violations." *Id.* at 27. The court concluded that because "Kellogg was a central player—perhaps even the primary actor—in the alleged breach, the practical course" was to "proceed in a forum where [Kellogg Caribbean] may join." *Id.*

Here, PHH is similarly the main participant in the unlawful actions underlying plaintiffs' complaint, and it is therefore an indispensable party. Plaintiffs allege that all relevant times, "PHH, through its Board of Managers, controlled the actions/decisions of its subsidiaries, People's Health and

CCMG."[76]     Carol Solomon, whom plaintiffs allege was defendants' representative throughout their negotiations, was a member of PHH's Board of Managers.[77]     Indeed, plaintiffs allege throughout their complaint that PHH was the main actor in the factual events underlying their claims.[78] Thus, as in *Freeman* and *Kellogg*, PHH is an indispensable party under Rule 19(b).  *See id.* at 26-27; *Freemen*, 754 F.2d at 559.

The Court also finds both PHH and CCMG to be indispensable parties under the Rule 19(b) factors.  The first factor concerns the potential prejudice to the absent or existing parties if the action were to go forward.  First, People's Health could be prejudiced if this action were to proceed against it alone, because People's Health could also be named as a defendant in any state court action plaintiffs were to bring against PHH and CCMG.  People's

---

[76]     R. Doc. 71 at 10 ¶ 19.

[77]     *Id.* ¶ 20.

[78]     *See, e.g., id.* at 10 ¶ 23 (alleging that the "promises and commitments Ms. Solomon made, and the actions Mr. Lemus and Mr. Sanchez took . . . in reliance thereon were ultimately for PHH's benefit"); *id.* at 11-12 ¶¶ 24-34 (alleging that PHH made the strategic decision to begin providing direct healthcare services, and also instigated the construction of the medical centers); *id.* at 18 ¶ 68 (alleging that Solomon provided Lemus and Sanchez with documents and other information that "appeared to manifest PHH's intention (through People's Health) to proceed with the parties'" objective to have plaintiffs run the Westwego and Gretna medical centers); *id.* at 28 ¶ 130 (alleging that "PHH's Board" passed a resolution authorizing People's Health and CCMG to enter into a term sheet with plaintiffs that allegedly materially changed the terms the parties previously agreed to).

Health "has an interest in avoiding multiple and repetitive litigation." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1313 (5th Cir. 1986); *see also Schutten v. Shell Oil Co.*, 421 F.2d 869, 873 (5th Cir. 1970) (noting that a defendant has a right to be safe from needless multiple litigation). Second, PHH and CCMG could be prejudiced in their absence, because a ruling in this case could prejudice them in a subsequent state court action. Even if PHH and CCMG were not bound by this Court's ruling under the doctrine of *res judicata*, an adverse ruling against People's Health "would be persuasive precedent in a subsequent proceeding, and would weaken [their] bargaining position for settlement purposes." *Acton Co., Inc. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 78 & 81 (1st Cir. 1982). The first Rule 19(b) factor therefore supports a finding that PHH and CCMG are indispensable parties.

The second Rule 19(b) factor asks whether this potential prejudice can be lessened or avoided by any protective measures. The Court finds there is no clear way to fashion a prospective judgment or relief to avoid this potential prejudice.

The third Rule 19(b) factor concerns whether the Court could render an adequate judgment if the action were to proceed without PHH and CCMG. A judgment is "adequate" if it furthers the public interest in "complete, consistent, and efficient" resolution of controversies. *Provident Tradesmens*

*Bank & Tr. Co.*, 390 U.S. at 111. As already addressed, allowing this action to proceed could result in separate federal and state actions against defendants involving identical factual matters. In such a situation, the public interest is furthered by ensuring that the action can be prosecuted against all of the required parties in one setting. *Id.*

Finally, the fourth Rule 19(b) factor concerns whether the plaintiff has an adequate remedy if the case is dismissed. The Court sees no reason why this action cannot proceed in Louisiana state court. In particular, there is no risk that dismissal would operate to plaintiffs' prejudice on the basis that their claims brought in state court would be untimely. The parties dispute whether some of plaintiffs' claims are subject to Louisiana's one-year prescriptive period for delictual actions, or its ten-year period for contractual actions.[79] But the parties appear to agree that if the one-year period applies, plaintiffs' claims would be untimely in *this action*.[80] Thus, dismissing this matter and forcing plaintiffs to bring their claims in state court will have no effect on the question of whether some of their claims are prescribed.

---

[79]    *See* R. Doc. 74 at 19-20; R. Doc. 77 at 8-10.
[80]    *Id.*

## IV.  CONCLUSION

For the reasons stated above, the Court finds that the parties are not completely diverse, and that the Court therefore lacks subject matter jurisdiction over the matter.  Plaintiffs' complaint is DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this __7th__ day of June, 2019.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE